## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case Action No. 1:22-cv-00129

TINISHA SASSO, AMANDA
PROUT, MELANIE SUMMERS,
and JONA PETERS,

       Plaintiffs,

v.

AIMS COMMUNITY COLLEGE, and
DAVID HACKMANN, in their
individual capacities,

       Defendants.

---

### PLAINTIFFS' COMPLAINT AND JURY DEMAND

---

      NOW COME Plaintiffs TINISHA SASSO, AMANDA PROUT, MELANIE SUMMERS, and JONA PETERS, by and through their attorneys, WAHLBERG, WOODRUFF, NIMMO & SLOANE, LLP, and for their Complaint against the above-named defendants, state as follows:

### PARTIES, JURISDICTION, AND VENUE

      1.     At all times relevant to this lawsuit, Plaintiff Tinisha Sasso (hereinafter "Ms. Sasso") is a female and resided in Greeley, Weld County, Colorado.

      2.     At all times relevant to this lawsuit, Plaintiff Amanda Prout (hereinafter "Ms. Prout") is a female and resided in Greeley, Weld County, Colorado.

      3.     At all times relevant to this lawsuit, Plaintiff Melanie Summers (hereinafter "Ms. Summers") is a female and resided in Greeley, Weld County, Colorado.

4.      At all times relevant to this lawsuit, Plaintiff Jona Peters (hereinafter "Ms. Peters") is a female and resided in Fort Collins, Larimer County, Colorado.

5.      At all times relevant to this lawsuit, all four Plaintiffs were enrolled students at Defendant Aims Community College (hereinafter "Aims") in the Radiology Technology (hereinafter "Rad Tech") Program at the main campus in Greeley, Weld County, CO.

6.      At all times relevant to this lawsuit, Defendant Aims regularly received Federal monies for purposes of providing services to its students in Colorado.

7.      At all times relevant to this lawsuit, Defendant Aims was a public educational institution and body incorporated under the laws of the State of Colorado and a Colorado municipal corporation with its principal place of business in the County of Weld, State of Colorado.  Defendant Aims received federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Tile IX.

8.      At all times relevant to this lawsuit, Defendant David Hackmann ("Hackmann") is a male and was employed by Aims and a faculty member of the Rad Tech program and thus conducted business in Greeley, Weld County, Colorado.

9.      Defendant Hackmann was at all times relevant to this cause of action an employee of Aims, at a public college, and acted within the scope of his employment and under color of state law.

10.     This case arises under the laws of the United States, specifically, Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq*. and 42 U.S.C. § 1983.

11.     The amount in controversy exceeds the sum of $75,000.00 dollars, exclusive of costs, interest, and attorney fees; and this Court has subject matter jurisdiction.

12.     This Court has jurisdiction over the claims set forth herein that arise out of federal law pursuant to 28 U.S.C. § 1331 and/or has supplemental jurisdiction over the claims set forth herein that arise out of state law pursuant to 28 U.S.C. § 1367.

13.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Weld.

## COMMON ALLEGATIONS

14.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

15.     The Rad Tech program at Defendant Aims includes both a didactic and a practical/laboratory component. As part of the Rad Tech program, students are taught how to eventually position patients and take x-rays. Students often practice "positioning" on each other, where one student would pretend to be a patient.

16.     During positioning exercises, instructors would observe students, offer feedback and advice, and would sometimes correct positioning by touching the student playing the "patient" in order to achieve the correct position.

## ALLEGATIONS SPECIFIC TO EACH PLAINTIFF

## TINISHA SASSO

17.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

18.     Defendant Hackmann was one of Ms. Sasso's professors and Rad Tech program instructors at Defendant Aims between January of 2020 and September of 2020.

19.     At all times between January of 2020 and September 2020, Defendant Hackman was required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

20.     At all times between January of 2020 and September 2020, as an educational institution in receipt of federal financial assistance, Aims and/or Aims employees were required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

21.     At all times between January of 2020 and September 2020, Defendant Hackman was required to adhere to 42 U.S.C. § 1983.

22.     On or about January 20, 2020, at Defendant Aims, Defendant Hackman called Ms. Sasso a "slacker" in front of other students and laughed loudly at her during an important examination. After the examination, Defendant Hackmann noticed Ms. Sasso was visibly upset about his previous comments. He approached Ms. Sasso and whispered in her ear, "Look, this is going to be between you and me. You can't tell anyone this, okay? You're likeable, you're slim, you're young, you have a good figure, and you're pretty. You will be able to get a job very easily. Don't worry about this grade."

23.     On or about January 22, 2020, at Defendant Aims, Defendant Hackmann approached Ms. Sasso from behind and positioned his pelvis so that his groin was placed against Ms. Sasso's buttocks. Defendant Hackmann then proceeded to place his hands around Ms. Sasso's neck, attempting to "fake" choke her.

24.     In February 2020, Ms. Sasso reported Defendant Hackmann's ongoing inappropriate behaviors, and ongoing sexual and discriminatory harassment to an Aims employee and professor, Roberta Eckdahl. Specifically, but not exclusively, Ms. Sasso informed Ms. Eckdahl that Defendant Hackmann removed his shirt to show Ms. Sasso his

tattoo, attempted to "fake" choke Ms. Sasso by placing his hands around her neck and positioning his pelvis against her buttocks, commented that he would make Ms. Sasso's life a "living hell," would repeatedly whisper in Ms. Sasso's ear and wink at her, and had informed Ms. Sasso that she would be able to find a job because she was pretty and had a good figure.

25.     At all relevant times, Ms. Eckdahl was a person with official capacity to take corrective action.

26.     Before Ms. Sasso suffered further discrimination, harassment, and sexual assault, Ms. Eckdahl had actual notice that Defendant Hackmann posed a risk to female students.

27.     Upon information and belief, Ms. Eckdahl, as an employee, professor, and clinical instructor at Defendant Aims, could have appropriately addressed the situation and taken steps to prevent further inappropriate behavior, sexual and discriminatory harassment and mistreatment by Defendant Hackmann against students at Aims.   Instead, Ms. Eckdahl disregarded Ms. Sasso's complaints, failed to take them seriously, and instructed Ms. Sasso to forget about the mistreatment and simply "let it go."  Ms. Eckdahl led Ms. Sasso to believe that Defendant Hackmann's conduct was normal, and/or accepted at Defendant Aims.

28.     Upon information and belief, Ms. Eckdahl failed to take any appropriate steps to report, address, or confront Defendant Hackmann's inappropriate behavior, sexual and discriminatory harassment, and she failed to implement protective measures to ensure Ms. Sasso and/or other students' safety.

29.     Upon information and belief, a few months after Ms. Sasso reported Defendant Hackmann's inappropriate conduct, sexual and discriminatory harassment to Ms. Eckdahl, another student at Defendant Aims, who is not a party to this case, reported to Ms. Eckdahl that Defendant Hackmann had been inappropriately touching her genital area.

30.     Defendant Aims was deliberately indifferent to the complaints made by Ms. Sasso and the other student to Ms. Eckdahl and Defendant Aims took no corrective action.

31.     Following Ms. Sasso's report of Defendant Hackman's inappropriate conduct, sexual and discriminatory harassment to Ms. Eckdahl, Defendant Hackman's sexual and discriminatory harassment became progressively worse.

32.     Following the report by the other student, who is not a party to this case, of Defendant Hackman's inappropriate conduct, sexual and discriminatory harassment to Ms. Eckdahl, Defendant Hackman's sexual and discriminatory harassment continued.

33.     Throughout the month of February 2020, at Defendant Aims, Defendant Hackmann would repeatedly whisper in Ms. Sasso's ear that he intended to make her life a "living hell." When saying this, Defendant Hackmann would wink at Ms. Sasso.

34.     On or about February 1, 2020, at Defendant Aims, Defendant Hackmann told Ms. Sasso that he had found and reviewed extensively her personal online Facebook page. Defendant Hackmann discussed Ms. Sasso's personal pictures, criticized her previous haircuts, and commented on previous jobs she had held. Defendant Hackmann told Ms. Sasso that he had also found and reviewed extensively her boyfriend's personal Facebook page.

35.     Beginning in February 2020, and periodically thereafter, at Defendant Aims, Defendant Hackman would comment on Ms. Sasso's skin color, stating that she looked yellow somedays and tan on other days.

36.     Additionally, in February 2020, at Defendant Aims, Defendant Hackman noticed a tattoo of a taco on Ms. Sasso's wrist.   Upon seeing her tattoo, Defendant Hackman told Ms. Sasso that they were tattoo buddies. He then pulled his shirt down, exposing part of his upper body and chest, to show Ms. Sasso his tattoo of a taco on his bicep.

37.     After reporting Defendant Hackmann's conduct to Ms. Eckdahl, on numerous occasions, at Defendant Aims and/or a Defendant Aims clinical facility, Defendant Hackmann inappropriately touched Ms. Sasso's genital area under the guise of "positioning" her for an x-ray, including poking her vagina.

38.     On or about March 9, 2020, at Defendant Aims, Defendant Hackmann was walking up the stairwell behind Ms. Sasso when he smacked Ms. Sasso on the buttocks with a lanyard.

39.     On or about March 10, 2020, at Defendant Aims and/or a Defendant Aims clinical facility, Defendant Hackmann instructed Ms. Sasso to meet him early in the morning. Once at the site, Defendant Hackman instructed Ms. Sasso to sit with him in the cafeteria and have a coffee with him. At first, Ms. Sasso declined his offer, but Defendant Hackmann insisted such that Ms. Sasso felt she had no other option but to sit and have coffee with him.  During this interaction, Defendant Hackmann again brought up Ms. Sasso's personal Facebook page. Defendant Hackmann asked Ms. Sasso numerous questions about her personal life that were both unprofessional and inappropriate. When Defendant Hackmann recognized how uncomfortable Ms. Sasso had become with the conversation, he told Ms. Sasso that he was not "hitting" on her.

40.     During the conversation on March 10, 2020, Defendant Hackmann asked Ms. Sasso about her living situation and about her boyfriend. Defendant Hackmann asked about Ms. Sasso's plans to have a child and whether her boyfriend was the reason she was unable to become pregnant. Defendant Hackmann then told Ms. Sasso about his personal life including his ex-wife, his divorce, and his children.  Defendant Hackmann continued, "You know Sasso I can't believe that I am going to tell you this next part. I really shouldn't, you can't tell anyone. You have to keep this a secret. But actually, after that I met someone else who was in my x-

ray class at my last teaching job. Honestly, you remind me of her because she had only been with one guy. But that relationship was bad too because she was engaged at the time. We had to sneak around so she wouldn't get caught the entire time we were together. . . I don't know how her fiancé never caught on because I would leave hickeys all over her body, and then she would go home to him." This conversation in the cafeteria lasted for two hours.

41.     Throughout the time Defendant Hackmann was Ms. Sasso's professor and instructor at Defendant Aims, he continued to ask Ms. Sasso inappropriate questions about her personal life, and at one point advised her that her boyfriend was not treating her right and that she deserves someone who treated her better.

42.     From March 2020 through April 2020, at Defendant Aims and/or a Defendant Aims clinical facility, Mr. Hackmann told Ms. Sasso on numerous occasions that he was going to punish her for being his "problem child."

43.     In April 2020, the Rad Tech program classes went remote because of the COVID-19 pandemic. After this switch to remote classes, Defendant Hackmann began to frequently call and text Ms. Sasso, even though such communication was unwanted and unnecessary.

44.     During one of Defendant Hackmann's phone calls, knowing that Ms. Sasso was previously a hairstylist, Defendant Hackmann insisted Ms. Sasso come to his home to give him and his children haircuts.

45.     On numerous occasions, Defendant Hackmann invited Ms. Sasso to come to his home so he could give her an n-95 mask.  Ms. Sasso declined, so Defendant Hackmann requested that he visit her home to deliver the mask.

46.     Between March 2020 and August 2020, at Defendant Aims and/or a Defendant Aims clinical facility, there were repeated incidents during which Defendant Hackmann unnecessarily, inappropriately, and non-consensually touched Ms. Sasso.

47.     In or around March 2020, while in an examination room at Defendant Aims, Defendant Hackmann instructed Ms. Sasso to stand against the wall. He then placed his hands on Ms. Sasso's hips and rubbed his hands up her torso and placed them underneath the underwire of her bra. He proceeded to slide his hands down her side and place them again on her hips.  Finally, he removed his hands and winked at her.

48.     In or around May 2020, while at Defendant Aims, Defendant Hackmann placed his hands on Ms. Sasso's shoulders, rubbed her arms, and shook her body.

49.     In or around August 2020, while Ms. Sasso was at a Defendant Aims clinical facility, Defendant Hackmann placed his hand on Ms. Sasso's knee and rubbed his fingers up her thigh and pelvic region.

50.     Ms. Sasso spoke with other Aims agents and/or employees, including radiology techs, and students, about the touching, unwanted attention, and harassment, all of whom had noticed and agreed that Defendant Hackmann's conduct toward Ms. Sasso was inappropriate.

51.     The constant sexual and discriminatory harassment, unwanted attention, and nonconsensual touching often brought Ms. Sasso to tears, gave her anxiety, and made her feel uncomfortable, upset, and depressed.  Ms. Sasso was concerned Defendant Hackmann's conduct would negatively impact her grades and her ability to successfully complete her education at Defendant Aims.  Ms. Sasso also feared that she would be kicked out of the Rad Tech program and Defendant Aims if she confronted Defendant Hackmann about his conduct.

52.     Because her complaints of misconduct, sexual and discriminatory harassment against Defendant Hackmann had been completely dismissed by Defendant Aims employee, Ms. Eckdahl, Ms. Sasso believed she was unable to do anything to remedy the situation.  Ms. Sasso felt she was stuck with Defendant Hackmann as her instructor, even though she felt unsafe around him.

53.     As a result of Defendant Hackmann's conduct, and Ms. Eckdahl's failure to remedy Defendant Hackmann's conduct, sexual and discriminatory harassment, Ms. Sasso has been robbed of a safe educational environment, free from sexual harassment, sexual hostility, and gender discrimination that students are promised when they attend a federally funded public university.  Ms. Sasso has been forced to endure a sexually hostile environment and was deprived of the equal educational benefits and opportunities that were available to her peers at Defendant Aims.

## **AMANDA PROUT**

54.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

55.     Defendant Hackmann was one of Ms. Prout's professors and an instructor in the Rad Tech program at Defendant Aims between January of 2020 and September of 2020.

56.     At all times between January of 2020 and September 2020, Defendant Hackman was required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

57.     At all times between January of 2020 and September 2020, as an educational institution in receipt of federal financial assistance, Aims and/or Aims employees were required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

58.     On or around February 7, 2020, at Defendant Aims, Defendant Hackmann made an unwanted, unwelcomed, and inappropriate comment about Ms. Prout's tattoo on her lower back stating, "nice tattoo Prout," as he proceeded to nod his head and wink at Ms. Prout.

59.     On several occasions in February and March 2020 at Defendant Aims, Defendant Hackmann unnecessarily, inappropriately, and non-consensually placed his hand on Ms. Prout's inner thigh and ran his fingers across her crotch and vagina.

60.     In February or March 2020, at Defendant Aims, during a class period that was focused on positioning the pelvis, hip, and proximal femur, Defendant Hackmann instructed Ms. Prout to lie on an X-ray exam table. Under the guise of positioning Ms. Prout for an X-ray, Defendant Hackmann placed his hand on Ms. Prout's inner thigh and ran his hand across her crotch and vagina multiple times. Ms. Prout never consented to Defendant Hackmann's inappropriate sexual contact and was traumatized by his conduct.

61.     Between May 2020 and June 2020, at a Defendant Aims clinical facility, Defendant Hackmann placed his hand on Ms. Prout's thigh and told Ms. Prout that she was pretty and had a nice body.

62.     In July 2020, at a Defendant Aims clinical facility, Defendant Hackmann told Ms. Prout that he could see her underwear when she bent over.   He then expressed to Ms. Prout, "Don't get me wrong, if we weren't in a clinical setting, I'd be checking you out." While he said this, he was winking at Ms. Prout.

63.     During the time that Defendant Hackmann was Ms. Prout's professor and Rad Tech program instructor, he informed Ms. Prout that he had had a prior sexual relationship with a student, and he noted that he would be interested in dating another student after she graduated.

64.     In July 2020, at a Defendant Aims clinical facility, Defendant Hackmann remarked to Ms. Prout, "I'm going to spank you."

65.     On or around September 1, 2020, during a positioning class at Defendant Aims, Defendant Hackmann asked Ms. Prout about an upcoming vacation.  When Ms. Prout mentioned that she was going on vacation with her ex-boyfriend, Defendant Hackmann became visibly upset. He grabbed Ms. Prout's shoulders, shook her back and forth, and questioned why she would go on vacation with her ex-boyfriend. Defendant Hackmann told Ms. Prout she should not spend time with her ex-boyfriend.  He explained, "You never know who may be interested in you and is watching. You could upset that person and you don't want that. Just wait until after you graduate."

66.     On or around September 8, 2020, at Defendant Aims, Mr. Hackmann hugged Ms. Prout without her consent.

67.     Between February and September 2020, at Defendant Aims, Defendant Hackman directed numerous uncomfortable and at times sexual comments toward Ms. Prout. Throughout this time, Defendant Hackmann would also occasionally put his hands around Ms. Prout's neck and pretend to choke her.  Defendant Hackmann would also require that Ms. Prout remain in his office with him for hours at a time.

68.     Ms. Prout became traumatized by the sexual and discriminatory harassment, inappropriate sexual comments and touching, and unwanted attention. Ms. Prout was uncomfortable, nervous, and fearful of being alone with Defendant Hackmann.  She also became concerned that Defendant Hackmann would lower her grade if she responded negatively to his comments and conduct.

69.     As a result of Defendant Hackmann's conduct, and Defendant Aims failure to remedy his conduct, Ms. Prout has been robbed of a safe educational environment free from sexual harassment, sexual hostility, and gender discrimination that students are promised when they attend a federally funded public university.  Ms. Prout has been forced to endure a sexually hostile environment and was deprived of the equal educational benefits and opportunities available to her peers at Defendant Aims.

## MELANIE SUMMERS

70.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

71.     Defendant Hackmann was one of Ms. Summers' professors and instructors in the Rad Tech program at Defendant Aims between January of 2020 and September of 2020.

72.     At all times between January of 2020 and September 2020, Defendant Hackman was required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

73.     At all times between January of 2020 and September 2020, as an educational institution in receipt of federal financial assistance, Aims and/or Aims employees were required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

74.     During one of Ms. Summers' first class at Defendant Aims with Defendant Hackmann, occurring on or about January 15th, 2020, Defendant Hackmann harassed Ms. Summers, including being verbally aggressive, defensive, and yelling at Ms. Summers when she asked clarifying questions.

75.     Soon after January 15th, in late January 2020, Ms. Summers informed Defendant Aims employee and Department Chair of the Rad Tech Program, Jeanette McDonough, about

Defendant Hackmann's inappropriate behavior and discriminatory harassment. Ms. McDonough disregarded Ms. Summers complaint, which led Ms. Summers to believe that Defendant Hackmann's conduct was acceptable to Defendant Aims.

76.    Ms. Summers also expressed her concerns about Defendant Hackmann numerous times to staff, students, and radiology techs at Defendant Aims and other clinical facilities associated with Defendant Aims. Additionally, Ms. Summers believes that staff, students, and radiology techs at Defendant Aims and other clinical facilities associated with Defendant Aims witnessed and observed inappropriate conduct and discriminatory harassment from Defendant Hackmann directed at female students. Ms. Summers specifically discussed Defendant Hackmann's inappropriate conduct with Andrew Gottlieb, a radiology tech at a clinical facility associated with Defendant Aims, who shared the same concerns. Ms. Summers believes that Mr. Gottlieb may have shared his concerns about Defendant Hackmann with Ms. McDonough.

77.    At all relevant times, Ms. McDonough was a person with official capacity to take corrective action.

78.    Before Ms. Summers and other female students such as Ms. Sasso, Ms. Prout, and Ms. Peters suffered further discrimination, harassment, and sexual assault, Ms. McDonough had actual notice that Defendant Hackmann posed a risk to female students.

79.    Upon information and belief, Ms. McDonough, as a Defendant Aims employee and as the Department Chair of the Rad Tech program, could have appropriately addressed the situation and taken steps to prevent further inappropriate behavior and mistreatment. Instead, Ms. McDonough disregarded Ms. Summers' complaints and failed to take them seriously. The apparent lack of concern and indifference to Ms. Summers' complaints led Ms. Summers to

believe that she could not voice her concerns or make complaints about the instructors at Defendant Aims, including but not limited to Defendant Hackmann.

80.    Upon information and belief, Ms. McDonough failed to take any appropriate steps to report, address, or confront Defendant Hackmann's inappropriate behavior, sexual and discriminatory harassment, and failed to implement protective measures to ensure Ms. Summers' safety.

81.    During the Spring semester of 2020, Ms. Summers noticed that Defendant Hackmann's sexual and discriminatory harassment was escalating, and he was targeting young female students.  Ms. Summers observed Defendant Hackmann choking Ms. Sasso.  Ms. Summers overheard Defendant Hackmann make inappropriate sexual comments to other young students.  Finally, Defendant Hackmann mistreated and yelled at Ms. Summers and other students.  Ms. Summers was older than her female classmates.

82.    Around February or March 2020, while Ms. Summers was playing the role of a patient in a class, Defendant Hackmann began unnecessarily, inappropriately, and non-consensually touching Ms. Summers' hip and private area.  Ms. Summers felt uncomfortable, sexually violated, and discriminated against by Defendant Hackmann. Ms. Summers also observed Defendant Hackmann inappropriately touch other female students during class.  It became clear that Defendant Hackmann used the requirements of the Rad Tech program to get away with inappropriate sexual contact with female students.

83.    Due to Defendant Hackmann's unkind, disparate, sexual and discriminatory harassment, Ms. Summers worked extremely hard to complete her comps for the fall semester in the summer, so that she would be graded by a different instructor.  She feared that Defendant Hackmann was unprofessional and would not grade her fairly and impartially.

84.     As a result of Defendant Hackmann's conduct and sexual and discriminatory harassment, and the failure of Ms. Eckdahl and Ms. McDonough to remedy his conduct, Ms. Summers has been robbed of a safe educational environment free from sexual harassment, sexual hostility, and gender discrimination that students are promised when they attend a federally funded public university.  Ms. Summers has been forced to endure a sexually hostile environment and was deprived of the equal educational benefits and opportunities that were available to her peers at Defendant Aims.

**JONA PETERS**

85.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

86.     Defendant Hackmann was one of Ms. Peters' professors and instructors in the Rad Tech program at Defendant Aims between January of 2020 and September of 2020.

87.     At all times between January of 2020 and September 2020, Defendant Hackman was required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

88.     At all times between January of 2020 and September 2020, as an educational institution in receipt of federal financial assistance, Aims and/or Aims employees were required to adhere to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

89.     On January 15, 2020, Defendant Hackmann aggressively scolded Ms. Peters in front of the entire class for taking notes while he was teaching. Ms. Peters held back tears while she tried to explain that taking notes helped her learn, but Defendant Hackmann disregarded and ignored her and continued to harass and discriminate against her.

90.     On June 15, 2020, at a Defendant Aims clinical facility, while alone in Defendant Hackmann's office, Defendant Hackmann told Ms. Peters she had a bad attitude and continued to harass and discriminate against her.

91.     During the week of June 22, 2020, Ms. Peters showed Defendant Hackmann X-rays she had taken.   Defendant Hackmann proceeded to harass and embarrass Ms. Peters by tearing the X-rays apart in front of the other younger students and X-ray techs. Defendant Hackmann also scolded, singled-out, and mocked Ms. Peters for not knowing all possible responses to a question.

92.     The following week, Ms. Peters was written up by Defendant Hackmann for the above incidents.   Defendant Hackmann indicated that Ms. Peters had a bad attitude and embarrassed him in front of the techs.

93.     As a result of Defendant Hackmann's conduct and discriminatory harassment, and Defendant Aims' failure to remedy his conduct, Ms. Peters has been robbed of a safe educational environment free from sexual and discriminatory harassment, sexual hostility, and gender discrimination that students are promised when they attend a federally funded public university.   Ms. Prout has been forced to endure a hostile, threatening, and intimidating environment and was deprived of the equal educational benefits and opportunities that were available to her peers at Defendant Aims.

**COUNT I – VIOLATION OF TITLE IX OF THE EDUCATION**
**ACT OF 1972, 20 U.S.C. § 1681 *et seq.* –DEFENDANT AIMS (AS TO ALL PLAINTIFFS)**

94.     Plaintiffs reincorporate and re-allege each and every preceding paragraph as if fully set forth herein.

95.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) provides in pertinent part:

> *"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."*

96.     Title IX is implemented through the Code of Federal Regulations. 34 C.F.R. Part 106.8(b) provides:

> *"... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."*

97.     Defendant Aims receives federal financial assistance and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

98.     Title IX protects third parties from sexual harassment or violence in a school's education programs and activities. Under Title IX, sexual harassment includes any type of unwelcome conduct of a sexual nature, such as sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

99.     Defendant Aims' Policy states that it "does not tolerate Title IX sexual harassment, sexual assault, domestic violence, dating violence, stalking, or Title IX retaliation in its community and will undertake a prompt, fair, and impartial process for all parties when it occurs."

100.    Defendant Aims' Policy on Discriminatory Harassment states, "Discriminatory harassment in any form, both on and off campus, is unacceptable behavior and will not be tolerated."  Discriminatory Harassment is defined as:

   a.   "Conduct that conditions a person's employment, enrollment as a student, or participation in Aims activities on that person's age, color, disability, sex (sexual harassment and/or sexual violence are forms of sex discrimination) national or ethnic origin, race, religion or creed, sexual orientation or veteran status, unless otherwise permitted or required by applicable law; or

b. "Employment or academic decisions made in retaliation for a person' s unwillingness to submit to such conduct or benefits or privileges provided as a result of such submission; or

c. "Conduct of any type (oral, written, graphic or physical) directed against a person because of his or her age, color, disability, sex (whether or not the conduct is sexual in nature), national or ethnic origin, race, religion or creed, sexual orientation, veteran status or participation in protected EEO activities (i.e., opposition to prohibited discrimination or participation in the statutory complaint process) and which also unreasonably interferes with the person's work or academic performance or participation in College activities, or creates a working or learning environment that a reasonable person would find threatening or intimidating."

101.    Under Defendant Aims Policy, Discriminatory Harassment includes, but is not limited to, the following:

a. "Sexual harassment, as defined by the Office of Civil Rights (OCR) is:

*"...unwelcome conduct of a sexual nature, which can include unwelcome sexual advances, requests for sexual favors, or other verbal, nonverbal, or physical conduct of a sexual nature. Thus, sexual harassment prohibited by Title IX can include conduct such as touching of a sexual nature; making sexual comments, jokes, or gestures; writing graffiti or displaying or distributing sexually explicit drawings, pictures, or written materials; calling students sexually charged names; spreading sexual rumors; rating students on sexual activity or performance; or circulating, showing, or creating e-mails or Web sites of a sexual nature."*

b. "Repeated references to sex, race, national origin, color, age, veteran status, disability, sexual orientation or religion in lectures, class assignment or other official activities when there is no relationship between the reference and content of the course."

c. "Discussing one's personal sexual activity in the workplace."

102.    Defendant Aims' Title IX Sexual Misconduct Procedure also prohibits sexual misconduct, defined as, "the actual or attempted offenses of sexual harassment, sexual assault, domestic violence, dating violence, and stalking."

103.    Plaintiffs are each "persons" within the meaning of 20 U.S.C. §1681(a).

104.    Defendant Hackmann's repeated sexual contact and touching, fake choking, discriminatory, racial and sexual comments, unwarranted and unwanted attention, harassing

statements, Facebook stalking, and other mistreatment against Plaintiffs constitutes discriminatory harassment and sexual misconduct within the meaning of Title IX.

105.    Defendant Hackmann's conduct and Defendant Aims' deliberate indifference and failure to respond to being on actual notice of Defendant Hackmann's conduct is a violation of Defendant Aims' policy on Discriminatory Harassment.

106.    Defendant Aims failed to comply with their own policies and procedures related to discriminatory harassment, which was a direct and proximate cause of Plaintiffs' loss of educational opportunities, injuries, and damages.

107.    Defendant Hackmann's actions and conduct while employed by Defendant Aims were carried out under one of Defendant Aim's educational programs.

108.    Defendant Hackmann's discriminatory harassment and sexual misconduct was severe, pervasive, and objectively offensive and effectively barred Plaintiffs' access to educational opportunities and benefits at Defendant Aims.

109.    The physical, verbal, and behavioral conduct by Defendant Hackmann was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably interfering with Plaintiffs' work or academic performance or creating an intimidating, hostile, or offensive environment for working, learning, or living on campus.

110.    The environment created from the conduct of Defendant Hackmann was hostile based on the circumstances, including but not limited to the frequency of the conduct, the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the physically threatening and humiliating nature of the conduct.

111.   Defendant Aims' employee Ms. Eckdahl was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment and sexual misconduct committed by Defendant Hackmann since February 2020.

112.   Defendant Aims' employee Ms. McDonough was an "appropriate person" within the meaning of Title IX, who had "actual notice" of the discriminatory harassment committed by Defendant Hackmann since January 2020.

113.   At all times relevant to this action, Ms. Eckdahl was an official of Aims with the authority to take corrective action or preventative measures to end and/or remedy the discriminatory harassment and sexual misconduct.

114.   At all times relevant to this action, Ms. McDonough was an official of Aims with the authority to take corrective action or preventative measures to end and/or remedy the discriminatory harassment and sexual misconduct.

115.   Defendant Aims officials had actual knowledge of Defendant Hackmann's inappropriate behavior for a significant period of time before the harm that Plaintiffs experienced and during the harm that Plaintiffs were experiencing, yet none of the officials took any steps towards any corrective action or made any effort to protect students from the harm.

116.   Defendant Aims' deliberate indifference to Defendant Hackmann's conduct as described herein was malicious, oppressive, or in reckless disregard of Plaintiffs' rights such that punitive damages are appropriate.

117.   Pursuant to Title IX, Defendant Aims and its officials are required to investigate all allegations of sexual and discriminatory harassment upon receiving a report.

118.   Defendant Aims is subject to liability because despite actual knowledge of Defendant Hackmann's discriminatory harassment and sexual misconduct, it was deliberately indifferent and took no action to prevent or remedy continued discrimination after receiving credible and repeated reports of inappropriate behavior by Defendant Hackmann. The lack of adequate response by Defendant Aims was clearly unreasonable in light of the known circumstances.

119.   Defendant Aims acted with deliberate indifference, and in a clearly unreasonable manner by failing to respond to allegations of discriminatory harassment and sexual misconduct so as to protect Plaintiffs and others from such abuse.

120.   As a result of Defendant Aims' deliberate indifference to actual knowledge of Defendant Hackmann's discriminatory harassment and sexual misconduct, Plaintiffs were subject to further discriminatory harassment and sexual misconduct by Defendant Hackmann.

121.   Additionally, Defendant Aims failed to adequately supervise Defendant Hackmann, despite having actual knowledge that Defendant Hackmann posed a substantial risk of additional discriminatory harassment and sexual misconduct to the female students to whom he had unfettered access.

122.   Defendant Aims' failure to formally investigate and take corrective actions to repeated complaints of Defendant Hackmann's discriminatory harassment and sexual misconduct effectively denied Plaintiffs educational opportunities and benefits at Aims College.

123.   As a result of the foregoing, Plaintiffs' have suffered extensive damages, have lost educational opportunities, have been unable to continue their courses of study, have missed opportunities for classes, and were deprived of equal access to education.

124.    As a result of the foregoing, Plaintiffs suffered injuries including, but not limited to, the following:

    a.   Physical pain and suffering;

    b.   Mental anguish;

    c.   Fright and shock;

    d.   Denial of social pleasure and enjoyments;

    e.   Embarrassment, humiliation, and mortification;

    f.   Reasonable expenses of necessary medical care, treatment, and services;

    g.   Loss of earning capacity;

    h.   Lost wages;

    i.   Loss of educational opportunities;

    j.   Any and all injuries or damages that are learned though the course of discovery.

**COUNT II – SEXUAL HARASSMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEFENDANT HACKMANN (AS TO PLAINTIFFS SASSO, PROUT, AND SUMMERS)**

125.    Plaintiffs reincorporate and reallege each and every preceding paragraph as if fully set forth herein.

126.    Under the Fourteenth Amendment, Plaintiffs Sasso, Prout, and Summers had the right as public university students to personal security and bodily integrity and Equal Protection of Laws.

127.    Defendant Hackmann sexually harassed Plaintiffs Sasso, Prout, and Summers while he was a state actor, acting in his individual capacity, under the color of state law.

128.    Defendant Hackmann subjected Plaintiffs Sasso, Prout, and Summers to violations of their right to personal security and bodily integrity and Equal Protection of Laws by

subjecting them to egregious sexual contact and sexual harassment on numerous occasions while they were his students.

129.    Defendant Hackmann subjected Plaintiffs Sasso, Prout, and Summers to sexual harassment and unwanted sexual contact that was so severe and objectively offensive that it violated their constitutional rights.

130.    Defendant Hackmann was in a direct supervisory and evaluative role over Plaintiffs Sasso, Prout, and Summers.

131.    Defendant Hackmann's conduct constituted disparate treatment of females and had a disparate impact on female students.

132.    Plaintiffs Sasso, Prout, and Summers had their academic life and standing disrupted, and have personally suffered emotional and psychological distress, all as a direct and proximate result of Defendant Hackmann's sexual harassment and sexual contact and presence on Defendant Aims' campus.

133.    Defendant Hackmann's conduct against Plaintiffs Sasso, Prout, and Summers as described herein, violated clearly established and articulated constitutional rights, of which a reasonable person in his position would have known.

134.    The acts of physical, sexual, and emotional abuse by Defendant Hackmann of Plaintiffs Sasso, Prout, and Summers, under all circumstances relevant to this cause of action lacked any and all pedagogical purpose or justification and lacked any socially redeeming value.

135.    The acts of physical, sexual, and emotional abuse by Defendant Hackmann of Plaintiffs Sasso, Prout, and Summers, under all circumstances relevant to this cause of action amounted to deliberate indifference to the risk that Plaintiffs Sasso, Prout, and Summers,

would suffer harm and to Plaintiffs' health and safety which Defendant Hackmann was specifically aware yet disregarded.

136.    Defendant Hackmann's deliberate indifference under the circumstances relevant to this cause of action reflect a failure to even care about the health and safety of Plaintiffs Sasso, Prout, and Summers and such deliberate indifference under such circumstances literally shocks the conscience.

137.    As a result of the foregoing, Plaintiffs Sasso, Prout, and Summers suffered injuries including, but not limited to, the following:

    a.   Physical pain and suffering;

    b.   Mental anguish;

    c.   Fright and shock;

    d.   Denial of social pleasure and enjoyments;

    e.   Embarrassment, humiliation, and mortification;

    f.   Reasonable expenses of necessary medical care, treatment, and services;

    g.   Loss of earning capacity;

    h.   Lost wages;

    i.   Loss of educational opportunities;

    j.   Any and all injuries or damages that are learned though the course of discovery.

138.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendant Hackmann is liable to Plaintiffs for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiffs Sasso, Prout, and Summers and/or to punish or deter Defendant Hackmann, this

Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

139.     The actions and/or deliberate indifference of Defendant Hackmann as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiffs Sasso, Prout, and Summers. As a result of such intentional conduct, Plaintiffs Sasso, Prout, and Summers are entitled to punitive damages in an amount sufficient to punish Defendant Hackmann and to deter others from like conduct.

**COUNT III– HOSTILE ENVIRONMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 – DEFENDANT HACKMANN (AS TO ALL PLAINTIFFS)**

140.     Plaintiffs reincorporate and reallege each and every preceding paragraph as if fully set forth herein.

141.     Under the Fourteenth Amendment, Plaintiffs had the right as public university students to personal security and bodily integrity and Equal Protection of Laws.

142.     Defendant Hackmann sexually harassed Plaintiffs while he was a state actor, acting in his individual capacity, under the color of state law.

143.     Defendant Hackmann subjected Plaintiffs to sexual harassment, unwanted sexual contact, and discriminatory conduct that was so severe and objectively offensive that it violated their constitutional rights.

144.     The physical and verbal conduct committed by Defendant Hackmann was of a sexual nature and was unwelcome and sufficiently severe or pervasive from both a subjective and objective viewpoint such that the conduct had the purpose or effect of unreasonably

interfering with Plaintiffs' work or academic performance, or creating an intimidating, hostile, or offensive environment for working, learning, or living on campus.

145. The environment created by Defendant Hackmann's conduct was hostile based on the circumstances, including but not limited to the frequency of the conduct, the nature and severity of the conduct, the relationship between the parties, the location and context in which the conduct occurred, and the threatening and humiliating nature of the conduct.

146. The environment resulting from Defendant Hackmann's conduct also constitutes a hostile environment.

147. Defendant Hackmann's conduct as described herein violated Plaintiffs' clearly established constitutional rights of which a reasonable person would have known.

148. The acts of physical, sexual, verbal, and emotional abuse by Defendant Hackmann against Plaintiffs under all circumstances relevant to this cause of action lacked any and all pedagogical purpose or justification and lacked any socially redeeming value.

149. The acts of physical, sexual, verbal, and emotional abuse by Defendant Hackmann against Plaintiffs under all circumstances relevant to this cause of action amounted to deliberate indifference to the risk that Plaintiffs would suffer harm and to the Plaintiffs' health and safety which Defendant Hackmann was specifically aware yet disregarded.

150. Defendant Hackmann's deliberate indifference under the circumstances relevant to this cause of action reflect a failure to even care about the health and safety of the Plaintiffs and such deliberate indifference under such circumstances literally shocks the conscience.

151. As a result of the foregoing, Plaintiffs suffered injuries including, but not limited to, the following:

    a. Physical pain and suffering;

   b.   Mental anguish;

   c.   Fright and shock;

   d.   Denial of social pleasure and enjoyments;

   e.   Embarrassment, humiliation, and mortification;

   f.   Reasonable expenses of necessary medical care, treatment, and services;

   g.   Loss of earning capacity;

   h.   Lost wages;

   i.   Loss of educational opportunities;

   j.   Any and all injuries or damages that are learned though the course of discovery.

152.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendant Hackmann is liable to Plaintiffs for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiffs and/or to punish or deter Defendant Hackmann, this Court should order and award additional damages to be allowed so as to satisfy any and all such inadequacies.

153.   The actions and/or deliberate indifference of Defendant Hackmann as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiffs. As a result of such intentional conduct, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendant Hackmann and to deter others from like conduct.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**PLAINTIFFS DEMAND A JURY TRIAL**

Respectfully submitted this 18th day of January 2022.

**WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP**


By: *s/ Michael Nimmo*
Michael Nimmo (36947)
Charles Mendez (47467)
WAHLBERG, WOODRUFF,
NIMMO & SLOANE, LLP
Attorneys for Plaintiffs
4601 DTC Boulevard, Ste. 950
Denver, CO 80237
T: 303.571.5302
F: 303.571.1806
michael@denvertriallawyers.com
charles@denvertriallawyers.com
*Attorneys for Plaintiffs*